**FILED**
**Jun 05, 2020**
**09:16 AM(CT)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
# AT NASHVILLE

| | | |
|---|---|---|
| **BETHANY SHELTON,** | ) | **Docket No. 2017-06-2203** |
| Employee, | ) | |
| v. | ) | |
| **HOBBS ENTERPRISES, LLC,** | ) | **State File No. 72450-2017** |
| Employer, | ) | |
| And | ) | |
| **NORGUARD INSURANCE** | ) | **Judge Joshua Davis Baker** |
| **COMPANY,** | ) | |
| Carrier. | ) | |

_____

## COMPENSATION HEARING ORDER
_____

The Court held a compensation hearing on June 2, 2020, to determine if Ms. Shelton is entitled to workers' compensation benefits for a shoulder injury she allegedly suffered while emptying a trash can at work. For the reasons below, the Court concludes she is not entitled to benefits, denies her request for relief, and dismisses her claim with prejudice.

### Claim History

This case concerned a claim for a shoulder injury. Ms. Shelton worked for Hobbs, a company owning several gas stations, as a cashier and assistant-manager trainee at the company's station on McGavock Pike near the Opryland Hotel. Her duties as a cashier and trainee included assisting customers, keeping the store clean, stocking the cooler and emptying trash. It was this last duty that resulted in this claim.

On August 26, 2017, while emptying an outdoor trash can near the gas pumps, Ms. Shelton said she "felt something, a sharp pain," in her right shoulder while removing the trash from the can. She told her coworker, another assistant-manager trainee, about the incident, and also told the district manager that she "pulled something." She did not ask for treatment at that time.

1

About a month before the work accident, Ms. Shelton suffered a car accident that caused her some pain, and she began seeing Dr. Trung Nguyen. Dr. Nguyen noted a little over a week before the work accident that Ms. Shelton complained of "right shoulder pain starting about a month ago." When asked about this complaint, Ms. Shelton testified she was having muscle spasms in her shoulder and denied it was related to her workplace accident.

Less than a week after the alleged injury, Ms. Shelton returned to Dr. Nguyen, still complaining about her shoulder. She had an MRI, and after reading the results, Dr. Nguyen suggested Ms. Shelton see a specialist, Dr. Sean Kaminsky.

Ms. Shelton took the MRI report and recommendation to Mary Leedy, her direct supervisor. Ms. Leedy completed paperwork to report the claim to Hobbs's management. She also agreed to alter Ms. Shelton's schedule and reduce the amount of heavy lifting she had to do on the job.

After Hobbs received notice of the claim, Deanna Nelson, Hobbs's office manager, reported the claim to the insurance company, and Ms. Shelton received a panel of physicians. Ms. Shelton said she tried to see one of the panel doctors three times but was declined treatment. About a month after Ms. Shelton received the physician panel, Hobbs fired her.

After her termination, Ms. Shelton went to see Dr. Kaminsky, who diagnosed her with several conditions: osteoarthritis, complete rotator-cuff tear, degenerative labrum tear, and "bicipital tendinitis." Dr. Kaminsky surgically repaired her shoulder and released her with a five-percent impairment rating to the body as a whole.

Dr. Kaminsky gave the only expert testimony on causation, and both parties relied on his opinion to support their positions. On direct examination, Dr. Kaminsky stated that Ms. Shelton's lifting incident "may have exacerbated some underlying shoulder abnormalities" and further agreed that the history of her injury was "consistent" with his diagnosis.

On cross-examination, defense counsel presented Dr. Kaminsky with medical records showing Ms. Shelton complained of shoulder pain that began one month before the alleged injury. When asked how this information impacted his opinion on what caused Ms. Shelton to need shoulder surgery, Dr. Kaminsky said:

> She—in her notes she told me she had an injury on August 26th that initiated her pain. I do see some information to the contrary, that she was having some shoulder pain that preceded that. It may be contributions from both pre-existing and/or those findings. It's a little bit difficult to say. She

2

definitely had some chronicity to both the arthroscopic and imaging findings of her shoulder.

Redirect examination failed to clarify the issue, as Dr. Kaminsky said only that "it's possible" when asked whether lifting a bag of trash exacerbated an underlying shoulder condition so that it required surgery.

## Findings of Fact and Conclusions of Law

Ms. Shelton requested temporary and permanent-partial disability benefits as well as continuing medical care for her shoulder. While both parties provided proof concerning the claim's history and circumstances of Ms. Shelton's termination, the threshold requirement is that she must prove by a preponderance of the evidence that her shoulder injury arose primarily out of and in the course and scope of her employment to receive any benefits. *See* Tenn. Code Ann. § 50-6-239(c)(6) (2019); *Panzarella v. Amazon.com, Inc.*, 2018 Tenn. LEXIS 244, at *8 (Tenn. Workers' Comp. Panel, May 16, 2018). She failed to carry this burden.

An injury arises primarily out of and in the course and scope of employment only if the employee shows by a preponderance of the evidence that the employment contributed more than fifty percent in causing the injury, considering all causes. To prove this, Ms. Shelton must show by "a reasonable degree of medical certainty that the employment contributed more than fifty percent" to the cause of her injury. "Shown to a reasonable degree of medical certainty means that, in the opinion of the physician, it is more likely than not considering all causes, as opposed to speculation or possibility." Tenn. Code Ann. § 50-6-102(14)(B)-(D). The "speculation or possibility" portion of the statute is key in this claim.

Dr. Kaminsky provided the only cauation opinion, and his opinion was far from concrete. On examination from Ms. Shelton's counsel, Dr. Kaminsky said that the history Ms. Shelton described was consistent with his diagnosis. However, he went on to say only that the workplace accident "may have exacerbated some underlying shoulder abnormalities." On redirect, he stayed the course by stating "it's possible" that lifting the bag of trash exacerbated an underlying shoulder problem. And on cross-examination, when presented the medical records from Dr. Nguyen showing prior shoulder complaints, he stated "it's a little bit difficult to say" whether the degenerative, preexisting condition or the work accident caused the need for surgery.

The Tennessee Supreme Court Special Workers' Compensation Panel has considered several cases with similar medical testimony and denied relief, deeming the testimony speculative or uncertain. Most similar to Ms. Shelton's case, in *Willis v. All Staff*, 2017 Tenn. LEXIS 455, at *14 (Tenn. Workers' Comp. Panel May 22, 2017), the Panel held that the doctor's testimony stating that work acitivies "could have,"

3

"possibly," or "in theory" caused the employee's knee injury was "insufficient" to satisfy the preoponderance-of-the-evidence standard.

As the Panel ruled in *Willis*, the Court will also rule here. The Court finds that Dr. Kaminsky's testimony is insufficient to satisfy the perponderance standard. Because Ms. Shelton bore the burden of proof and failed to satisfy it, the Court denies her request for relief and dismisses her claim with prejudice to its refiling.

**IT IS ORDERED** as follows:

1. The Court denies Ms. Shelton's request for relief and dismisses her claim with prejudice to its refiling.

2. This order shall become final thirty days after entry absent an appeal.

3. Hobbs shall file a completed SD-2 with the Court Clerk within ten days after the order becoming final.

4. Hobbs shall pay the $150 filing fee to the Court Clerk within ten days of the order becoming final.

**ENTERED JUNE 5, 2020.**

_____
**Joshua Davis Baker, Judge**
**Court of Workers' Compensation Claims**

# APPENDIX

Exhibits:

1. Deposition of Dr. Sean Kaminsky, including attached exhibits
2. Discovery Responses of Bethany Shelton
3. Medical Records
4. Light Duty Agreement dated 10/5/17
5. Workers' Compensation Questionnaire completed by Bethany Shelton
6. First Report of Injury
7. Text Messages with Mary Leedy
8. Write-ups for Bethany Shelton dated 7/8/17, 8/8/17, and 8/21/17

Technical Record:

1. Petition for Benefit Determination
2. Dispute Certification Notice

# CERTIFICATE OF SERVICE

I certify that a copy of this Order was sent as indicated June 5, 2020.

| Name | Certified Mail | Email | Service sent to: |
|---|---|---|---|
| Joseph Dalton | | X | joedaltonlaw@comcast.net |
| Allen Callison | | X | allen.callison@mgclaw.com |

_____
**Penny Shrum, Court Clerk**
**Court of Workers' Compensation Claims**
Wc.courtclerk@tn.gov



<u>Compensation Hearing Order Right to Appeal</u>:

If you disagree with this Compensation Hearing Order, you may appeal to the Workers' Compensation Appeals Board or the Tennessee Supreme Court. To appeal to the Workers' Compensation Appeals Board, you must:

1. Complete the enclosed form entitled: "Notice of Appeal," and file the form with the Clerk of the Court of Workers' Compensation Claims *within thirty calendar days* of the date the compensation hearing order was filed. When filing the Notice of Appeal, you must serve a copy upon the opposing party (or attorney, if represented).

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing of the Notice of Appeal. Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service. In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the filing fee. You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal. **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of your appeal.**

3. You bear the responsibility of ensuring a complete record on appeal. You may request from the court clerk the audio recording of the hearing for a $25.00 fee. A licensed court reporter must prepare a transcript and file it with the court clerk *within fifteen calendar days* of the filing the Notice of Appeal. Alternatively, you may file a statement of the evidence prepared jointly by both parties *within fifteen calendar days* of the filing of the Notice of Appeal. The statement of the evidence must convey a complete and accurate account of the hearing. The Workers' Compensation Judge must approve the statement of the evidence before the record is submitted to the Appeals Board. If the Appeals Board is called upon to review testimony or other proof concerning factual matters, the absence of a transcript or statement of the evidence can be a significant obstacle to meaningful appellate review.

4. After the Workers' Compensation Judge approves the record and the court clerk transmits it to the Appeals Board, a docketing notice will be sent to the parties. The appealing party has *fifteen calendar days* after the date of that notice to submit a brief to the Appeals Board. *See the Practices and Procedures of the Workers' Compensation Appeals Board.*

**To appeal your case directly to the Tennessee Supreme Court, the Compensation Hearing Order must be final and you must comply with the Tennessee Rules of Appellate Procedure. If neither party timely files an appeal with the Appeals Board, the trial court's Order will become final by operation of law thirty calendar days after entry.** *See* **Tenn. Code Ann. § 50-6-239(c)(7).**

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



## NOTICE OF APPEAL

Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

Docket No.: _____

State File No.: _____

Date of Injury: _____

_____

**Employee**

v.

_____

**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies).  Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____   ☐ Motion Order filed on _____

☐ Compensation Order filed on _____   ☐ Other Order filed on _____

issued by Judge _____.

### Statement of the Issues on Appeal

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

_____

### Parties

**Appellant(s)** (Requesting Party): _____ ☐ Employer ☐ Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐ Employer ☐ Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

## CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 ____.

_____
*[Signature of appellant or attorney for appellant]*